GULOTTA, Judge.
Plaintiff’s suit for injunctive relief to restrain the City of New Orleans from demolishing his two-family, residential rental property and for damages resulting from the demolition was dismissed by the trial judge. Plaintiff appeals. We affirm.
On August 25, 1967, Allen H. Borne purchased the subject property located at 516-18 General Taylor Street in the City of New Orleans. The sale from Eureka Homestead recites a consideration of $8,400.00.[1] According to Borne, the property was subsequently occupied by tenants from whom he derived rental revenue. After extensive renovation and destruction of the property caused by tenants and vandals, Borne boarded the property for safety reasons in 1973. Real estate tax research on the property revealed not only unpaid taxes due from 1972 through 1978, but also “uninhab” liens for the same period. The taxes and liens from 1972 through 1978 total $8,672.30. The “uninhab” liens bearing against the property resulted from City inspections required because of the dilapidated and dangerous condition of the property. In addition to the outstanding liens and taxes due the City, there existed a balance owed to the homestead on the vendor’s lien and mortgage in excess of $5,000.00 in June, 1978.
On June 19, 1978, plaintiff sought an injunction to restrain the City from demolishing the property. The trial judge on the same date, issued a temporary restraining order against the City and set a hearing for June 23, 1978 on the demands for preliminary injunction. Thereafter, apparently, negotiations took place toward a settlement of the outstanding liens and taxes. During these negotiations and after the expiration of the extensions of the TRO, however, demolition of the property was commenced by the City Although plaintiff had objected to the demolition after learning of the City’s action, it was agreed by the City and plaintiff that the property would be completely demolished. This agreement was *750 reached for the reason that partial demolition had caused a safety problem. Plaintiff thereafter amended his petition to pray for damages from the demolition.
It is plaintiff’s position that the City failed to show that the liens were properly placed against the property when it was securely boarded and not dangerous; that the City commenced demolition contrary to its agreement not to demolish pending settlement negotiations; that the unauthorized liens prevented plaintiff from selling the property to a third party for the sum of $6,700.00; and that plaintiff suffered damages as a result of the demolition and possible foreclosure of the property or sale of the property to the City for unpaid taxes. Plaintiff also attacks the constitutionality of the ordinances allowing “uninhab” liens.
The trial judge, in well written and well considered reasons stated:
“In the instant matter the evidence fails to support the allegations of unconstitutionality regarding the ordinances in question. Nor does the evidence support the allegations of an agreement by the City Attorney’s Office to refrain from demolishing the property located at 516-18 General Taylor Street in violation of an ‘alleged agreement’ by the City Attorneys not to proceed further towards the demolition of plaintiff’s property.
The agreement of the parties or their attorneys vel non to extend an expired temporary restraining order (more specifically the TRO dated June 19, 1978 and the two extensions dated June 23, 1978 and June 29,1978) in the absence of court approval, was inadequate and insufficient. The plaintiff’s suit will be dismissed.
Judgment will be granted accordingly.”
The record supports the trial court’s conclusion. Subsequent to the issuance of the TRO on June 19, 1978 and its extension to 10 days after June 29, 1978, no hearing was held on the preliminary injunction. More importantly, plaintiff failed to establish that any agreement for a moratorium on demolition existed between him and the assistant city attorney negotiating the settlement of the tax and lien assessment. In this connection, it is important to recognize that Tom Anzelmo and Jack Panno were handling the negotiations on the part of the City and that Charlotte A. Hayes and A. D. Freeman were handling the negotiations on behalf of plaintiff.
Plaintiff attempted to establish through the testimony of Salvatore Panzeca, an assistant city attorney, and A. D. Freeman, plaintiff’s attorney, that an agreement was made by the City not to demolish the property pending negotiations. While Freeman’s testimony is supportive of the existence of an agreement, Panzeca’s testimony was not. The problem from the plaintiff’s standpoint is that Panzeca’s discussion with plaintiff’s attorney clearly indicated that he was not the assistant city attorney handling the negotiation and that although he was in agreement that a settlement should be reached with plaintiff, the decisions were clearly left to Panno or Anzelmo who were handling the problem for the City Attorney’s office. The pertinent part of Panze-ca’s testimony in this regard is as follows:
“Q. Mr. Panzeca, didn’t you agree on behalf of your employer, the City, not to tear down our building while we were negotiating? Didn’t you agree to that?
A. As I said earlier, Mr. Freeman, to extend the temporary restraining order over the telephone with Miss Hayes. I agreed in July that if that was a workable arrangement until such time as she could meet with or agree with Mr. Anselmo and Mr. Panno to try to work out the problem, then yeah, sure, the thing should stay at a status quo until such time that all efforts had been exhausted to reach an agreement because it was a simpler solution to reach an agreement than it was to continue to fight the matter out in court. I said yes, that if that’s what Anselmo or Panno agreed to, then yes, that would be fine. That was the context of what I agreed to. She talked a lot, and I listened a lot.”
*751 Further, in answer to a later question whether or not Mr. Panzeca had ever entered into an agreement with plaintiff’s attorney, Panzeca testified:
“A. My first agreement was with Mr. Freeman’s associate, Miss Hayes. That was in July of 1978. I told the Court already, and I’ll repeat it again. My agreement with her was ‘Yes, I think this is a type of case that should be settled. Yes, in that direction we should extend the t.r.o. if that’s what was agreed upon. No action should be taken until efforts have been exhausted as to settle the matter or not settle the matter.’ That was my agreement. I was confirming with her her statement that two other Deputy City Attorneys had agreed not to go forward with the matter as long as the t.r.o. was there.”
The record also contains letters dated July 7 and July 18 from plaintiff’s attorney to Mr. Panzeca confirming the existence of an agreement that no further action toward demolition would be undertaken by the City pending negotiations as well as a copy of letter dated August 9, 1978 also confirming an agreement. Panzeca acknowledged receipt of communications relative to possible compromise. He stated, however, that he could not confirm or deny from these letters what agreement Panno or Anzelmo had reached with plaintiff. These letters were apparently not acknowledged in writing, and Panzeca stated he had never sent a letter extending the TRO.
A fair evaluation of Panzeca’s testimony was that, pending possible settlement of the dispute, the TRO should be extended, if that had been the arrangement which plaintiff’s counsel had previously worked out with Anzelmo or Panno. Neither Panno nor Anzelmo testified. We might add at this point that Freeman’s testimony was to the effect that agreement had been made between him, Panno and Anzelmo that the building would not be torn down. Freeman did not testify that he had made the agreement with Panzeca, and the letters sent to Panzeca were in confirmation of an earlier agreement made by Freeman with Panno and Anzelmo. No explanation is given by plaintiff why Panno and Anzelmo were not called either to confirm or deny the existence of the agreement.
In connection with the claim for damages in the supplemental and amended petition resulting from the demolition, Borne testified that Evelyn Johnson had agreed to purchase the property on April 12, 1976 for $7,600.00. This was before the property was demolished but while it was boarded up. Because of the City’s liens on the property, the act of sale was not passed. After demolition, on September 7, 1978, Johnson again made an offer to purchase the vacant property for $5,000.00.
A plaintiff seeking injunctive relief from the enforcement of an ordinance must show: 1) the clear invasion of a property right; 2) threatened irreparable injury; and, 3) the manifest unconstitutionality of the statute. National Food Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903 (La. 1973). Plaintiff in our case, has the burden of showing, among other things, unlawful demolition.
Significantly, plaintiff offered no evidence to show that the liens were unconstitutionally or improperly placed upon the property. Furthermore, in the absence of an enforceable agreement by the City not to demolish the property after the expiration of the TRO, plaintiff failed to show the property was not properly demolished. Under these circumstances, we cannot say the trial judge erred in dismissing plaintiff’s suit for injunctive relief or for damages.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. It is not clear whether this is a sale and resale and the $8,400.00 represents the amount loaned by the homestead, or whether this is in fact the purchase price.